RECEIVED
JAN 22 2018
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| DARRELL SCHEXNAYDER | CIVIL ACTION NO. 2:17-00938 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| LOUISIANA CARPENTERS PENSION FUND | MAG. JUDGE KAY |

## MEMORANDUM RULING

Before the court is "Defendant Louisiana Carpenters Pension Fund's Motion to Dismiss or, In the Alternative, for Summary Judgment" (R. #4) wherein the Louisiana Carpenters Pension Fund (the "Pension Fund") moves to dismiss the instant complaint on the following grounds:

(1) For failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6);

(2) Alternatively, to the extent the court should consider matters outside the pleadings, pursuant to Federal Rule of Civil Procedure 56;

(3) The Plaintiff is not eligible for Pension Fund benefits due to "disqualifying employment" pursuant to section 9.05 of the Pension Plan (the "Plan") and Trust Agreement which governs the eligibility for benefits;

(4) The complaint ignores the controlling Plan provision and fails to allege with specificity a breach of ERISA;

(5) The Complaint seeks enforcement under ERISA 502, but fails to assert any bases for these claims or to assert any legal entitlement to the benefits.

The Pension Fund ("Defendant") seeks to have the Complaint dismissed and that Plaintiff be ordered to reimburse the Fund for all costs incurred in defending this lawsuit, including attorney's fees.

1

Also, before the court is a "Motion to Strike Plaintiff's Memorandum in Opposition or, in the Alternative, for an Unopposed Extension of Time to Reply" (R. #7) wherein the Defendant seeks to strike the opposition to the motion to dismiss because it was filed late, or in the alternative, Defendant sought an extension of time. The court granted Defendant an extension of time to reply to the late filed opposition,[1] thus the motion to strike will be filed.

In its motion to dismiss and in the alternative, motion for summary judgment, Defendant requests that Plaintiff be ordered to reimburse the Fund for all costs incurred in defending this lawsuit, including attorney's fees. Defendant cites no statutory authority that would authorize this court to grant attorney's fees. Accordingly, Defendant's request attorney's fees will be denied.

## **FACTUAL STATEMENT**

Around December 2015, The Fund Administrator sent Plaintiff letters stating that "[i]t appears you may be eligible for a Pension with this Fund."[2] The Pension Fund received Plaintiff's application for pension benefits on June 30, 2016.[3] According to the application Plaintiff submitted, he had stopped working as a carpenter for Bellon Building Specialties ("Bellon") on December 20, 2012, and began employment for Bellon in "inside sales" on January 2, 2013.[4]

---

[1] See R. #9.
[2] R. #1-2 and 1-3.
[3] Defendant's exhibit 2.
[4] Id.

In his application, Plaintiff represented that he retired or intended to retire on December 26, 2015.[5] The Fund Administrator denied Plaintiff's application for benefits based on Section 9.04 <u>Retirement in General</u> wherein the Plan stated that Plaintiff had not actually retired. Plaintiff appealed the decision to deny retirement benefits to the Board of Trustees ("Trustees"). The Trustees interpreted the Western Louisiana Carpenters Pension Plan[6] (hereinafter referred to as the "Plan") provisions and considered the application of the Suspension of Benefit rules to Plaintiff's current employment at Bellon.[7]

Even though the Trustees approved Plaintiff's application for Early Unreduced Retirement under Section 5.01 (b) due to having reached the age of 55 and having earned at least 25 years of service, the Trustees also determined the Plaintiff's current employment with Bellon in "inside sales" as noted in his application, constituted Disqualifying Employment ultimately denying the benefits, i.e. Plaintiff was not exempt from the Plan's Suspension of Benefit Rules for Early Retirees.[8]

On March 23, 2017, the Board of Trustees' counsel issued the Board's written determination finding that a "sales" job with a contractor working within the Building Trades and Construction Industry constituted Disqualifying Employment for an Early Retiree.

---

[5] Id.
[6] In September 2016, by operation of merger, the Western Louisiana Carpenters Pension Plan became the Louisiana Carpenters Pension Fund. Before the merger date and adoption of the Restated Plan (effective January 2017), Plaintiff became eligible for the pension benefits and submitted an application to the Western Louisiana Carpenters Pension Plan.
[7] R. #1-6.
[8] R. #1-6.

The Rules for Retirees engaging in Disqualifying Employment before Normal Retirement Age are as follows:

    (i)    Disqualifying Employment Before Normal Retirement Age

        (1) If a Retiree who is receiving benefits under the Plan is subsequently re-employed in Disqualifying Employment prior to attainment of Normal Retirement Age ("NRA"), his monthly benefit shall be suspended in accordance with this subsection (a).

        (2) Monthly benefits shall be suspended for each month in which the Retiree is employed in Disqualifying Employment. In addition, the monthly benefit shall be suspended for an additional three (3) consecutive months, immediately following any consecutive period of one or more months during which he is employed in Disqualifying Employment; however, for NWLA Participants, this additional three (3) month suspension shall occur only if the NWLA Participant resumes Disqualifying Employment more than once during a calendar year (so that his benefits are suspended, recommenced and re-suspended one or more times in one calendar year), in which case it shall occur after the second and any subsequent period of suspension during such calendar year.

        (3) "Disqualifying Employment," for the period before Normal Retirement Age means "Section 203(a)(3)(B) service" within the meaning of ERISA Section 203(A)(3)(B) and the labor regulations issued thereunder, which includes employment or self-employment that is (a) in an industry covered by the Plan when the Participant's pension payment begins, (b) in the geographic area covered by the Plan when the Participant's pension begins, and (c) in any trade or craft in which the Participant is employed at any time; it shall also include any work for which contributions are required to be made to the Plan. Notwithstanding the foregoing provisions to the contrary, for Retirees other than those who were NWLA Participants and for suspensions of benefit purposes prior to Normal Retirement Age, there shall be no limit to the geographical area in which the Disqualifying Employment occurs, and Disqualifying Employment shall include employment or

4

> self-employment in any business which is under the jurisdiction of the Union.

After determining that Plaintiff's sales job constituted Disqualifying Employment for an Early Retiree, the Trustees requested additional information concerning Plaintiff's employment with Bellon[9] including Plaintiff's W2's and tax returns for 2016 to show earned income after Plaintiff's Annuity Starting Date. Plaintiff did not provide the Trustees with the additional information. Section 9.05(viii) states that failure to provide supporting documents regarding employment during retirement can result in a suspension of benefits by the Trustees.[10] Due to the suspension of benefits, Plaintiff filed the instant lawsuit.

In his Complaint, Plaintiff argues that the Suspension of Benefit rules from the Summary Plan Description ("SPD") would allow him to continue receiving benefits despite his current Disqualifying Employment. Defendant maintains that the Plan document controls and the SPD is not a contract but summarizes in brief the benefits and rules applicable to participants. Defendant argues that Plaintiff's complaint fails to establish a "violation" or that the Trustee's interpretation of its suspension of benefit rules was arbitrary or capricious.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---
[9] R. #1-7, p. 6-7.
[10] R. #1-6, p. 6-7; exhibit 1.

5

law.[11] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[12] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[13] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[14] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[15] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[16] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[17] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[18] The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[19]

## LAW AND ANALYSIS

Defendant filed the instant motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or in the alternative, pursuant to Rule 56. The court

---

[11] Fed. R. Civ. P. 56(c).
[12] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[13] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[14] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[15] Anderson, 477 U.S. at 249.
[16] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[17] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[18] Anderson, 477 U.S. at 249-50.
[19] Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

notes that Defendant has attached an affidavit in addition to other exhibits that are outside the pleadings; therefore the instant motion will be considered by the court as a motion for summary judgment.

In his complaint, Plaintiff asserts that Defendant's determination that he is engaged in "disqualifying employment" is wrong and contrary to the pertinent plan language and 29 U.S.C. § 1053(a)(3)(B) of ERISA. Specifically, this Court has to determine if Plaintiff is engaged in "disqualifying employment" which would suspend his early retirement benefits. Plaintiff suggests that the court must determine (a) whether Defendant utilized a full analysis in rendering its decision; (b) whether the Plan language is overly broad in violation of 29 U.S.C. § 1053 (a)(3)(B) of ERISA; (c) whether the Summary Plan Description accurately represents the Plan or is ambiguous; and (d) whether, as a result, Defendant was arbitrary and capricious in denying Plaintiff early retirement benefits by finding he was engaged in "disqualifying employment."

ERISA does not specifically provide a standard of review for a decision of the Board of Trustees. Fiduciaries, or Trustees are vested with discretionary authority in regard to plan administrative and benefit distribution decision making.[20] "[W]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion."[21] A decision to deny or suspend benefits is arbitrary and capricious under ERISA only if the Board's interpretation cannot be a reasonable interpretation of

---

[20] 29 U.S. C. § 1002 (21)(B) provides the definition that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."
[21] Firestone, at 954, citing Restatement (Second) of Trusts § 187 (1959).

7

the plan's terms.[22] Thus, federal courts have applied a very limited review determining only whether the Board's actions are arbitrary and capricious.[23]

The Fifth Circuit has considered certain factors to review whether the trustees' interpretations are reasonable or rational: (1) uniformity with ERISA and consistent past interpretations;[24] (2) "fair reading and reasonableness of that reading",[25] and (3) cost related to a different construction.[26]

Plaintiff relies on the following U.S. Fifth Circuit Court of Appeal decision as to interpretation of the Plan provision:

> Under any ERISA plan, the eligibility for benefits is governed in the first instance by the plain meaning of the plan language. We interpret ERISA plans "in their ordinary and popular sense as would a person of average intelligence and experience." In other words, we must interpret ERISA provisions as they are likely to be "understood by the average plan participant, consistent with the statutory language."[27]

"[A]mbiguities in insurance policies are construed against the insurer" when conducting a fair reading analysis of ERISA benefit plans.[28]

The Plan provides that:

---

[22] Thompson, at 343.
[23] Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 953 (1989); Thompson v. Asbestos Workers Local No. 53 Pension Fund, 716 F.2d 340, 343 (5th Cir. 1983); Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf, Inc., 637 F.2d 357, 362 (5th Cir. 1981).
[24] Dennard v. Richards Grp., Inc., 681 F.2d 306, 314 (5th Cir. 1982).
[25] Thompson, at 343; Dennard, at 314.
[26] Paris, at 362 (5th Cir. 1981).
[27] Crowell v. Shell Oil Co., 541 F.3d 295, 314 (5th Cir. 2008) (quoting Tucker v. Shreveport Transit Mgmt. Inc., 226 F.3d 394, 398 (5th Cir. 2000).
[28] Fralick v. Plumbers Pipefitters Natl., 2010 WL 2563429 (N.D. Texas 7/22/10), citing Lain v. UNUM Life Ins. Co. of Am., 279 F.3d 337, 345 (5th Cir. 2002).

8

> "Disqualifying Employment" includes employment or self-employment that is
>
> (a) In an industry covered by the Plan when the Participant's pension payment begins,
> (b) In the geographic area covered by the Plan when the Participant's pension begins, and
> (c) In any trade or craft in which the Participant is employed at any time.

Plaintiff notes that the word "and" in the aforementioned provision clearly specifies that all three prongs must be met for there to be "disqualifying employment." Plaintiff points out that the final decision letter from the Board of Trustees specifically states that it deemed Plaintiff's employment to be "Disqualifying Employment" based on satisfaction of only the first two of the three required prongs, and that any reference to "the same trade or craft" is completely omitted from the Defendant's determination to suspend Plaintiff's benefits due to "disqualifying employment."[29]

According to the letter of denial by the Trustees, Plaintiff's benefits were suspended with the following explanation:

> Because Bellon Building Specialists does perform work within the Building Trades and Construction Industry, the Trustees, at their March 16, 2017 Board meeting, determined that a sales job at Bellon building specialists does indeed constitute Disqualifying Employment for an Early Retiree, as that term is defined and has been applied consistently by the Trustees, as employment in an industry covered by the Plan and for a business which is under the jurisdiction of the Union.[30]

The Court notes that the denial letter specifically detailed all three prongs of the suspension of benefit rules and then concluded based on all three prongs that Plaintiff's

---

[29] Plaintiff also remarks that the letter from counsel for Defendant cites at the top of page 5, a "new Plan of Benefits" effective January 1, 2017, which changes and increases the scope of the definition of "disqualifying employment." The language broadens the definition of "disqualifying employment" by satisfying the first two prongs "OR" the third prong to find that an employee's benefits are suspended due to disqualifying employment.
[30] Letter dated March 23, 2017, p.6, attached to the Complaint as exhibit E. R. #1-6.

job in inside sales was disqualifying employment. The Court also finds troublesome the fact that the Trustees requested that Plaintiff provide "evidence of his continuing entitlement to his Early Retirement Pension for the months beginning August 2016."[31] The Trustee specifically requested Plaintiff's tax return for the particular year along with the relevant W-2, expressly warning Plaintiff that pursuant to § 9.05 (viii), failure to provide "Proof of Compliance with Suspension of Benefit Rules" would "result in a suspension of benefits...."[32] Plaintiff failed to provide any evidence for the Trustee to evaluate the facts and circumstances of Plaintiff's employment. Hence, Defendant maintains that a sales job in carpentry in the industry is disqualifying employment under the regulations, therefore, one could reasonably infer that a sales job at Bellon involved selling services related to the construction and building trades to customers.[33]

Defendant further argues that Plaintiff's distinction between "any" and the "same" trade or craft would make no difference because a sales job for a contributing employer is within the same trade or craft related to carpentry. Defendant cites Thompson v. Asbestos Workers Local No. 53 Pension Fund,[34] wherein the Fifth Circuit, after reviewing the legislative history, noted that the emphasis was in place for the "same industry"

---

[31] March 23, 2017 Letter, R. 31-6, p. 7.
[32] Section 9.05 (viii) of the Western Louisiana Carpenters Pension Plan, "Proof of Compliance with Suspension of Benefit Rules".
[33] See Skinner v. Nat'l Elec. Ben. Fund, 2013 WL 622358 at *5 (N.D. Ala. Feb. 20, 2013)(Trustees' decision to suspend benefits was reasonable and well-supported based on the limited facts. Participant's employment providing technical assistance in fire protection systems was determined to be "within the electrical field" which was disqualifying employment. Retiree claimed that his job duties were only administrative or providing assistance and advice to the maintenance department. However, the retiree did not give the trustees any evidence or relevant factual information to rebut this conclusion.
[34] 706 F.2d 340, 343 (5th Cir. 1983)

condition: "the benefits may be suspended if the employee has resumed employment in the same *industry* even though not with the same employer.[35]

Because the Trustees are vested with discretionary authority to determine eligibility and interpret all provisions of the Plan, this Court must determine whether the Trustees' suspension of benefit rules was arbitrary or capricious. A decision to deny or suspend benefits is arbitrary and capricious under ERISA only if the Board's interpretation cannot be a reasonable interpretation of the plan's terms.[36]

Plaintiff maintains that the Plan's definition of "disqualifying employment" is over broad in violation of 29 U.S. C. § 1053(a)(3)(B) of ERISA. Plaintiff argues that the Plan language "same trade or craft" provides for a suspension of benefits "in any trade or craft in which the Participant is employed at *any* time."[37] Plaintiff further maintains that the SPD[38] was ambiguous compared to the broader language of the term "trade or craft" in the Plan. Defendant maintains that the Trustees reasonably interpreted its Plan in a manner consistent under ERISA § 203 (29 U.S.C. § 1053(a)(3)(B)), reinforced by Secretary of Labor regulations (29 C.F.R. § 2530.203-3) which states that "a trade or craft in which the employee was employed at any time under the plan" includes either:

> (A) skill or skills, learned during a significant period of training or practice, which is applicable in occupations in some

---

[35] (emphasis added) citing 3 U.S. Code Congressional & Admin. News, 93rd congress, 2nd Session, 1974, p. 4724).
[36] Dennard v. Richards Grp., Inc., 681 F.2d 306, 314 (5th Cir. 1982); Thompson v. Asbestos Workers Local No. 53 Pension Fund, 554 F. Supp.296, 300 (M.D. La), aff'd, 716 F.2d 340 (5th Cir. 1983).
[37] Plaintiff's opposition, p. 7. R. #6.
[38] The SPD section regarding "disqualifying employment" states:

> It is the intention of the Board of Trustees to provide pension benefits for members who retire from the trade. A member who continues working in the trade and within the jurisdiction of the union is competing for jobs with active members, and it is not the intention of the Trustees to pay plan benefits in this situation.

11

industry, [or] (B) a skill or skills relating to selling, retailing, managerial, clerical or professional occupations...

Defendant argues that either of the definitions applied to Plaintiff's inside sales job with Bellon because his carpentry skills, learned over 25 years, was applicable to work in a sales job for the Building Trades and Construction industry. The Court finds merit to Defendant's position that Plaintiff's skills in carpentry are directly related to his sales job selling services in the Building Trades and Construction Industry. Our position is buttressed by the fact that Plaintiff failed to provide evidence to rebut the Trustees' finding that his inside sales job was disqualifying employment. Accordingly, based on the limited information (the application which stated that he was employed in "inside sales"), we cannot say that the Trustees' suspension of benefits was arbitrary and capricious.

## CONCLUSION

For the reasons set forth above the motion for summary judgment will be granted dismissing with prejudice the instant lawsuit; the motion to strike will be denied; and the request for attorney's fees will be denied.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 22nd day of January, 2018.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE